**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**RONALD JONES**,

                    Plaintiff,

          -against-                                    Index No. 22-cv-414

**THE CITY OF MT. VERNON,**
**SGT. JASON CONLEY,**
**OFFICER STEVEN ALCANTARA,**
**OFFICER MARIETTA,**

                    Defendants.

**PLAINTIFF RON JONES' OPPOSITION TO THE DEFENDANTS'**
**PARTIAL MOTION TO DISMISS**

Rickner PLLC
14 Wall Street, Suite 1603
New York, NY 10005

On the Brief:

          Robert Rickner, Esq.

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**THE FACTS ALLEGED** .........................................................................................................2

**ARGUMENT** ...........................................................................................................................4

   I.   THE MAILICIOUS PROSECUTION CLAIM IS TIMELY AND DEFENSE COUNSEL
MAY HAVE AN UNWAIVABLE CONFLICT. .................................................................5

      *a.*   *Defendants have applied the wrong statute of limitations.*..................................................5

      *b.*   *Defense counsel may have an unwaivable conflict of interest.*........................................7

   II.   PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS WELL PLED AND DISMISSAL
IS, AT A MINIMUM, PREMATURE. ...............................................................................8

   III.  PLAINTIFF'S CIVIL RIGHTS CONSPIRACY CLAIM IS NOT BARRED BY THE
INTRA-AGENCY CONSPIRACY DOCTRINE. ..............................................................9

   IV.  THE *MONELL* CLAIM IS WELL PLED. ......................................................................10

   V.   DISMISSAL OF THE NEGLIGENT HIRING, RETENTION, SUPERVISION, AND
TRAINING CLAIM WOULD BE PREMATURE. .........................................................12

   VI.  THE NEW YORK STATE CONSTITUTION DUE PROCESS CLAIMS ARE NOT
DUPLICATIVE BECAUSE THERE ARE NO *RESPONDEAT SUPERIOR* CLAIMS
UNDER 42 U.S.C. § 1983. .............................................................................................13

   VII.  ALTERNATIVELY, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.......14

**CONCLUSION** ......................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ........................................10, 12

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)..............................................................................8

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997)...................................13

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703 (S.D.N.Y. 2012) ...........................................11

*Bonilla v. City of New York*, No. 20-CV-1704 (RJD)(LB),

    2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020)..............................................................................6

*Buari v. City of New York*, 530 F. Supp. 3d 356 (S.D.N.Y. 2021) ...................................................13

*City of Canton v. Harris*, 489 U.S. 378 (1989)................................................................................10

*Clark v. City of Ithaca*, 235 A.D.2d 746 (4th Dep't 1997)................................................................6

*Conte v. Cty. of Nassau*, 596 F. App'x 1 (2d Cir. 2014) ...................................................................5

*Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017)...........................................14

*Dunton v. Suffolk Cty., State of N.Y.*, 729 F.2d 903 (2d Cir.),

    amended, 748 F.2d 69 (2d Cir. 1984) .........................................................................................7

*Edwards v. City of New York*, No. 14-CV-10058 KBF,

    2015 WL 5052637 (S.D.N.Y. Aug. 27, 2015)............................................................................11

*Estate of Adkins v. Nassau Cty.*, 141 A.D.2d 603 (2d Dep't 1988)...................................................5

*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016) ................................................................................8

*Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439 (S.D.N.Y. 1999) ...........................................13

*Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 242 (2d Cir. 2003) ..................................................4

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998)........................................................................12

*Int'l Shared Servs., Inc. v. Cty. of Nassau*, 222 A.D.2d 407 (2d Dep't 1995) ..................................6

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) .......................................................... 10

*Jones & Laughlin Steel Corp. v. Gridiron Steel Co.*, 382 U.S. 32 (1965) ................................ 6

*Kopchik v. Town of E. Fishkill*, New York, 759 F. App'x 31 (2d Cir. 2018) ............................ 14

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,

    507 U.S. 163 (1993) ........................................................................................................ 12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) ............. 14

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020) ........................................................... 4

*McGee v. Doe*, 568 F. App'x 32, 36 (2d Cir. 2014) .................................................................. 9

*McLeod v. City of New York*, 14-CV-7904 (RMB),

    2016 WL 3144052 (S.D.N.Y. Jan. 29, 2016) ................................................................... 11

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ......................... passim

*Nassau Cnty. Emp. "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293 (E.D.N.Y. 2004) ................ 9

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) .............................................................. 7

*Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016) ........................................................................ 5

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) ........................................................... 10, 11

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ............................................... 13

*Richey v. Hamm*, 78 A.D.3d 1600 (4th Dept. 2010) ................................................................. 6

*Rodriguez v. City of New York* 15-CV-07945,

    2018 WL 1276826 (S.D.N.Y. Mar. 9, 2018) .................................................................. 11

*Roman v. Comp USA, Inc.*, 38 A.D.3d 751 (2d Dept. 2007) ................................................... 6

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ............................................................. 14

*Ruggiero v. Phillips*, 292 A.D.2d 41 (4th Dep't 2002) .............................................................. 5

*Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 522 (S.D.N.Y.),

on reconsideration in part, 133 F. Supp. 3d 563 (S.D.N.Y. 2015).............................................12

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) ...................................................................9

*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014) ............................................................................8

*Washington v. City of New York*, No. 18 CIV. 12306 (CM),

2019 WL 2120524 (S.D.N.Y. Apr. 30, 2019)........................................................................11

*Young v. Cty. of Fulton*, 160 F.3d 899 (2d Cir. 1998) ...................................................................11

**STATUTES**

42 U.S.C. § 1983............................................................................................................passim

CPLR 215.......................................................................................................................5

N.Y. General Municipal Law § 50-i ........................................................................................5, 6

N.Y. General Municipal Law § 50-j ........................................................................................5, 6, 7

Plaintiff Ronald Jones ("Plaintiff" or "Jones") hereby submits this Opposition to the motion to dismiss filed by Sergeant Jason Conley, Officer Steven Alcantara, and Officer Edgar Moreta, who was inaccurately named as Marietta in the Complaint, (collectively the "Individual Defendants.") and the City of Mount Vernon (collectively, with the Individual Defendants, the "Defendants").

## PRELIMINARY STATEMENT

Plaintiff brings claims stemming from his unlawful prosecution based on a fabricated confession. The Defendants, individual officers and a municipality, brought only a partial motion to dismiss, targeting the claims against the City of Mount Vernon, but not most of the 42 U.S.C. § 1983 claims against the Individual Defendants. This strategy, along with the Defendants' implicit argument that the statute of limitations for the state law claims should be shorter because the Individual Defendants were not acting within the scope of their employment, raises a serious conflict of interest question because only one firm is representing all the Defendants. This Court, it is respectfully submitted, should address this conflict and resolve it. If the City of Mount Vernon is not going to indemnify its officers, or takes other positions against their interests, the Individual Defendants need their own counsel.

In fact, the question as to whether the Individual Defendants were acting within the scope of their employment—a question raised by the City of Mount Vernon's own argumentS—has not yet been resolved, so many of the arguments for dismissal the Defendants make are premature. The civil rights conspiracy and negligence claims may need to be dismissed if the Individual Defendants were not acting within the scope of their employment, but we will not know whether they were until discovery is completed. And the statute of limitations may be shorter, but only if the Individual Defendants were similarly acting outside the scope of their employment.

1

Defendants remaining arguments also fail. The failure to intervene claim should also remain because, until discovery is complete, Plaintiff has no way of knowing whether one of the Individual Defendants will claim that they did not have direct involvement in the constitutional violations claimed here. That said, the Individual Officers certainly had enough time to intervene, because the prosecution based on the fabricated evidence went on for years. The *Monell* claims are also sufficiently plead. There is a Department of Justice investigation into racist policing in Mount Vernon, which makes it at least plausible, for pleadings purposes, that this widespread conduct was the proximate cause of Plaintiff's wrongful prosecution. And the claims against the City for violations of the New York State Constitution are viable because there are no *respondeat superior* claims under 42 U.S.C. § 1983. So these claims are the only way to hold the City directly responsible for due process violations.

Plaintiff agrees to dismiss the negligent and intentional infliction of emotional distress claims. And the New York State Constitution claims against the Individual Officers should be dismissed because there are § 1983 against them individually that are effectively identical.

Finally, to the extent the Court does find a deficiency in the Complaint, we ask for leave to amend to correct it.

### THE FACTS ALLEGED

On November 14, 2018, Plaintiff Ronald Jones was heading into the Levister Towers in Mt. Vernon, New York to visit a family friend. C.¶22.[1] The Levister Towers housing complex overwhelmingly houses persons of color, and Jones, a Black man, visited frequently enough to know or recognize many of its residents. C.¶23. Jones entered the building, walked to the stairwell, and observed a white man with significant facial scaring walking quickly down the

---

[1] The Complaint is referenced as "C¶_."

2

stairs toward him. C.¶24. The presence of this man—whom Jones did not recognize as a regular in the building—startled Jones, who instinctively turned and hurried away. C.¶¶24–25. Jones immediately headed toward the opposite stairwell, climbed the stairs up to apartment 4K, and knocked on the door of the home he was visiting. C.¶25.

As Jones reached the apartment door, a second, unknown man grabbed Jones by the arm and turned him around, shortly before two more men (including the one Jones encountered on the stairs) appeared. C.¶26. The men began harassing Jones and questioning why he was running away from them. C.¶26. Jones, who had absolutely no idea that the strangers were police officers, responded that he was not running from them. C.¶27. After a brief back and forth, Jones asked the men who they were, at which point the men pulled out their department shields, which were hanging around their necks, tucked inside of their shirts, not at all visible to Jones. C.¶28.

Two of the officers, now known to Plaintiff as Defendants Conley and Marietta, began questioning Jones and his presence in the building. C.¶29. At the same time, Defendant Alcantara walked into a nearby garbage room where the incinerator shaft is located, returned moments later holding an open pizza box, and immediately ordered Jones's arrest. C.¶¶29–30. When Plaintiff asked why he was being arrested, he was told that he was in possession of a firearm, which, apparently, was inside of the pizza box Alcantara pulled from the incinerator room, along with a small quantity of marijuana and two gravity knives. C.¶31. None of the officers ever observed Jones in possession of any of these items, nor did they see him inside of the room in which the items were recovered. C.¶32. Simply stated, the officers had absolutely no reason to believe that these items belonged to or were ever within Plaintiff's possession.

Jones was detained and transported to the Mt. Vernon Police Department where he was searched, placed into a holding cell, and swabbed for a DNA sample. C.¶33. During his

confinement that night, the officers moved Jones between multiple small interview-type rooms before eventually taking him to court for arraignment. C.¶34. Jones was never formally questioned, and no legitimate investigation into the origins of the contraband took place. C.¶25. Instead, Jones was remanded at arraignment and remained in pre-trial custody in Westchester County Jail from November 15, 2018 until his release on March 27, 2020—nearly 500 days after he was stopped by the Individual Defendants—and during which time the officers fabricated evidence of a robust "confession" that never occurred. C.¶¶36–38.

On February 11, 2020, the criminal court held that the officers had illegally followed Plaintiff through the building before stopping him and accusing him of possession, and that the officers had no reasonable suspicion to believe that Plaintiff was committing, had committed, or was about to commit a crime. C.¶39. The court rejected outright the officers' contentions that Jones' behavior in the stairwell, coupled with the fact that the building was "known for crime," gave rise to reasonable suspicion to pursue and question Jones. C.¶¶39–40. All charges against Jones were subsequently dismissed in his favor on March 4, 2020. C.¶41.

## ARGUMENT

A motion to dismiss for failure to state a claim should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 242 (2d Cir. 2003) (quotation marks omitted) (emphasis added). When deciding such a motion, the court must "accept well pleaded factual assertions as true" and "draw all reasonable factual inferences in favor of the plaintiff." *Lynch v. City of New York*, 952 F. 3d 67, 76 (2d Cir. 2020).

4

## I.   THE MAILICIOUS PROSECUTION CLAIM IS TIMELY AND DEFENSE COUNSEL MAY HAVE AN UNWAIVABLE CONFLICT.

### a.   Defendants have applied the wrong statute of limitations.

Under N.Y. General Municipal Law § 50-i, an action against "a city, county, town, village, fire district or school district for personal injury … sustained by reason of the negligence or wrongful act of … any officer, agent or employee thereof … shall be commenced within one year and ninety days." This statute of limitations "takes precedence over the one-year period of limitations provided for in CPLR 215." *Estate of Adkins v. Nassau Cty.*, 141 A.D.2d 603, 603 (2d Dep't 1988). Indeed, the Second Circuit recently ruled that, "when, as in this case, a plaintiff sues the City (or an individual whom the City must indemnify), a one–year–and–90–day statute of limitations applies." *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) (citing N.Y. Gen. Mun. Law § 50–i and *Ruggiero v. Phillips*, 292 A.D.2d 41 (4th Dep't 2002)); *see also Conte v. Cty. of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014) (finding that the statute of limitations is one year and 90 days for intentional torts against municipal employees who are entitled to indemnification).

As the Second Circuit recognized in *Rentas*, this one-year-and-90-day statute of limitations for all torts applies both to the municipality itself and the individuals employed by the municipality—as long as there is a duty to indemnify. Here, the City of Mount Vernon is required to indemnify the Defendants under N.Y. General Municipal Law § 50-j in tort cases:

> [E]very city, county, town, village, authority or agency shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality, authority or agency for any negligent act or ***tort***, provided such police officer, at the time of the negligent act or ***tort*** complained of, was acting in the performance of his duties and within the scope of his employment.

(emphasis added). When an officer is entitled to indemnification under § 50-j, the shorter one-

5

year statute of limitations only applies when the officer's actions were "clearly not within the scope of employment." *Clark v. City of Ithaca*, 235 A.D.2d 746 (4th Dep't 1997). Scope of employment is a fact intensive inquiry and the defendant seeking to move to dismiss must prove conclusively they were not acting within the scope of their employment (*i.e.* not on duty at the time the tort was committed). *See Int'l Shared Servs., Inc. v. Cty. of Nassau*, 222 A.D.2d 407, 408 (2d Dep't 1995).

The Individual Defendants here are all officers entitled to indemnification under § 50-j because they are all alleged to have been acting within their scope of employment. The statute of limitations for malicious prosecution, a tort, is one year and 90 days. The charges against Plaintiff were dismissed on March 4, 2020. The statute of limitations was tolled for 228 days pursuant to a series of executive orders. *See Bonilla v. City of New York*, No. 20-CV-1704 (RJD)(LB), 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020) (applying COVID tolling in federal court). The statute of limitations, therefore, fell on a Sunday, January 16, 2022. Under Federal Rule of Civil Procedure 6(a), the statute of limitations fell on the following business day, January 17, 2022, which is the date the Complaint was filed.[2] *See Jones & Laughlin Steel Corp. v. Gridiron Steel Co.*, 382 U.S. 32, 33 (1965) (explaining that under Rule 6(a), a filing deadline that falls on a weekend is extended to the next business day); *Richey v. Hamm*, 78 A.D.3d 1600, 1601 (4th Dept. 2010) (same under state law).

In their brief, Defendants never address any of this case law or the applicable statutes. Instead, they cite a rare case where, unlike here, a malicious prosecution claim was brought against a business, not a municipality, and General Municipal Law § 50-i does not apply. *Roman v. Comp USA, Inc.*, 38 A.D.3d 751, 752 (2d Dept. 2007) (applying a shorter, one-year statute of

---

[2] Counsel was retained very close to the statute of limitations.

limitations to a malicious prosecution case against a business, cited by Defendants).

**b. Defense counsel may have an unwaivable conflict of interest.**

For the Defendants' statute of limitations argument to be successful, the City of Mount Vernon would have to prove that the Individual Defendants were not acting within the scope of their employment. It is also notable that the motion to dismiss targets all the claims against the City, but ignores the 42 U.S.C. § 1983 claims against the Individual Defendants. If the motion is granted in full—which it should not be—the City is the only Defendant that would be dismissed from the case.

If the City is going to take the position that the Individual Defendants were not acting within the scope of their employment, or that the Individual Defendants are not entitled to indemnity under General Municipal Law § 50-j, then the Individual Defendants need separate counsel. "[A] municipality may avoid liability by showing that the employee was not acting within the scope of his official duties while the employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." *Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006) (quotation omitted). In *Dunton v. Suffolk Cty., State of N.Y.*, for example, the Second Circuit ordered a new trial because the county attorney represented both the county and the individual officer, but then claimed at trial that the officer was acting outside the scope of his employment. 729 F.2d 903, 908 (2d Cir.), amended, 748 F.2d 69 (2d Cir. 1984); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1269–70 (2d Cir. 1986) ("The individual police officers were represented by separate counsel, selected by the officers but paid by the county, in order to avoid a potential conflict of interest problem condemned by this court in Dunton.").

While the Second Circuit declined to create a *per se* rule that requires separate counsel

7

for officers and their municipal employer, the Court did state that, "such a rule might indeed be appropriate." *Dunton*, 729 F.2d at 908 n4. And Plaintiff does not want to risk having to try this case twice because a conflict of interest emerges. Certainly, if the City of Mount Vernon agrees that it will indemnify the Individual Defendants, any conflict is resolved. But if the City will not, Defendants should at least be required to explain to the Court why there is no conflict. In *Jones v. The City of Albany, et al.* (17-cv-00865-DNH-DJS), District Court Judge David N. Hurd ordered the defendants (at Dkt. No. 33) to submit declarations, in camera, explaining why there was no conflict of interest that would prevent joint representation. Given the Defendants' arguments in this motion, a similar order is warranted in this case, to ensure there are no conflicts in defense counsel's joint representation of all Defendants.

## II.   PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS WELL PLED AND DISMISSAL IS, AT A MINIMUM, PREMATURE.

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557.

Here, Plaintiff alleges that the Individual Defendants fabricated evidence that was used to prosecute him. It may be that Defendants are ultimately correct that, because all the Individual

Defendants participated in the fabrication, they can only be liable for their individual conduct. But one or more of those Individual Defendants may argue that they did not directly participate, in which case the jury should be allowed to consider whether they should have intervened. But that cannot be determined, as a matter of law, through a motion to dismiss. And whether they had sufficient time to intervene cannot be readily disputed. Plaintiff was prosecuted for months. Any one of the officers could have phoned the prosecution, told them the truth, and put an end to the constitutional violation (or at least they could have obviated their own liability).

## III.   PLAINTIFF'S CIVIL RIGHTS CONSPIRACY CLAIM IS NOT BARRED BY THE INTRA-AGENCY CONSPIRACY DOCTRINE.

Defendants are correct that the Mount Vernon police cannot conspire with themselves. But that is not the end of the inquiry. There is an exception to the intra-corporate conspiracy doctrine where the officers, "are pursuing personal interests wholly separate and apart from the entity." *Nassau Cnty. Emp. "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004). Defendants, or at least the City of Mount Vernon, are implicitly arguing that the Individual Officers were acting outside the scope of their employment, as stated in Section I. above. If that argument is persuasive to a jury, the 42 U.S.C. § 1983 claims may fail, because their actions were not made under color of law. But a civil rights conspiracy claim allows plaintiffs to hold private actors responsible for conspiring with officers, and thus even if the officers are acting in purely their own interests, they would still be liable under federal law. *See McGee v. Doe*, 568 F. App'x 32, 36 (2d Cir. 2014), as amended (July 2, 2014) (finding that a private actor can be liable, along with police officers, for conspiring to violate someone's rights); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals").

After discovery, it may be apparent that this claim fails, because all the Individual Defendants were acting to advance the interests of their employer, the City of Mount Vernon. But it would be premature to hold otherwise here. Further, retaining this claim will not complicate or increase the burden of discovery.

## IV.     THE *MONELL* CLAIM IS WELL PLED.

A municipality is liable not only for the affirmative acts of the relevant policymaker, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but also for inaction: "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The "policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

In opposing a motion to dismiss, a Plaintiff need not identify a specific failure in the municipal defendant's training or supervision because, "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation." *Amnesty Am.*, 361 F.3d at 130 n10. Instead, a plaintiff must plead "the circumstances that give rise to a defendant supervisor's duty to act or, more precisely, the

10

circumstances under which a supervisor's failure to act triggers liability under § 1983."

*Reynolds*, 506 F.3d at 192.

Consequently, a plaintiff need only allege that "(1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that … there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights." *Young v. Cty. of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) (quotation omitted). References to newspaper articles, investigations by government entities, and prior litigation can be used to meet this standard. *See, e.g.*, *Edwards v. City of New York*, No. 14-CV-10058 KBF, 2015 WL 5052637, at *5 (S.D.N.Y. Aug. 27, 2015) (government investigations and newspaper articles); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (prior case law); *Rodriguez v. City of New York*, 15-CV-07945, 2018 WL 1276826, at *7 (S.D.N.Y. Mar. 9, 2018) (allowing Monell claims to go forward based on a government investigation). Even a handful of examples can be enough to survive a motion to dismiss. *See, e.g.*, *Washington v. City of New York*, No. 18 CIV. 12306 (CM), 2019 WL 2120524, at *22 (S.D.N.Y. Apr. 30, 2019) (finding that the two plaintiffs themselves, plus two other incidents, sufficiently alleged a custom or policy); *McLeod v. City of New York*, 14-CV- 7904 (RMB), 2016 WL 3144052, at *3 (S.D.N.Y. Jan. 29, 2016) (finding that plaintiff's beating was sufficiently brutal, on its own, to establish a custom and policy of deliberate indifference).

Here, Plaintiff, a Black man, has alleged that the pattern of discriminatory policing at Mount Vernon is so blatant that the Department of Justice launched an investigation and the **President of the United States** thought it was so important that he included the investigation in a

speech. It is at least plausible that the City of Mount Vernon has failed to meaningfully address the racist actions of its officers.

The handful of unpublished cases cited by the City are not persuasive, and indeed cannot override the rulings from the Second Circuit in cases like *Amnesty*. Further, the Supreme Court has ruled that there is no heightened pleading standard for *Monell* claims. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (holding that no heightened pleading standard apart from the requirements of Fed. R. Civ. P. 8 may be applied to *Monell* claims). Thus, the City's attempt to rachet up the pleading standards should be rejected.

Similarly, the City is wrong to argue that there is a heightened causation standard. In 42 U.S.C. § 1983 cases, causation follows the ordinary proximate cause standard from tort law. *See Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998). Giving plaintiff the benefit of all the inferences he is entitled to, a pattern and practice of racist policing could be found to be the proximate cause of his arrest.

## V.     DISMISSAL OF THE NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING CLAIM WOULD BE PREMATURE.

The authority relied on by Defendants, *Schoolcraft v. City of New York*, undermines their own argument. 103 F. Supp. 3d 465, 522 (S.D.N.Y.), on reconsideration in part, 133 F. Supp. 3d 563 (S.D.N.Y. 2015). There, the only reason the negligence claims were dismissed was because the defendants, including the municipality, admitted "that the individual defendants acted within the scope of their employment." *Id*. No such admission has been made here, so it would be premature to dismiss these negligence claims.

**VI.    THE NEW YORK STATE CONSTITUTION DUE PROCESS CLAIMS ARE NOT DUPLICATIVE BECAUSE THERE ARE NO *RESPONDEAT SUPERIOR* CLAIMS UNDER 42 U.S.C. § 1983.**

Defendants are correct that, generally, violations of the New York State Constitution are not viable if the plaintiff has other alternative claims for the same relief, like common law false arrest claims or common law battery claims. *See Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 447 (S.D.N.Y. 1999) (dismissing claims alleging a violation of the New York State Constitution because there are "alternative damage remedies" available). But Plaintiff's due process claims against the City of Mount Vernon are not covered by any other claims that have been, or could be, alleged.

There is no common law due process tort. Due process violations are actionable under 42 U.S.C. § 1983. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). But the Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*" in § 1983 cases. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). And *Monell* claims, as the Defendants acknowledge in their briefings, require far different proof than a *respondeat superior* claim.

Consequently, for due process violations, like fabrication of evidence, *respondeat superior* liability against a municipality for due process claims is only available under the New York State Constitution. Thus, this claim, insofar as it is made against the City of Mount Vernon, should not be dismissed.[3] *See Buari v. City of New York*, 530 F. Supp. 3d 356, 409 (S.D.N.Y. 2021) (allowing due process claims under state law against the City of New York to go forward, and collecting cases).

---

[3] This claim should be dismissed against the Individual Defendants, however, because they are liable under 42 U.S.C. § 1983.

13

Further, the specific due process violation at issue here is detailed in paragraph 38 of the Complaint, where Plaintiff alleges that the Individual Officers fabricated a detailed confession. The City of Mount Vernon is liable for this fabrication.

## VII.    ALTERNATIVELY, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

While Plaintiff maintains that he has plausibly stated his claims, he should be granted leave to amend if this Court disagrees, so that Plaintiff can address any deficiencies identified by the Court. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." ); *see also Kopchik v. Town of E. Fishkill*, New York, 759 F. App'x 31, 38 (2d Cir. 2018) ("The opportunity to amend the complaint is appropriately presented after the district court rules on a motion to dismiss."); *Cresci v. Mohawk Valley Cmty. Coll*., 693 F. App'x 21, 25 (2d Cir. 2017) ("It is the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies.") (internal citations omitted); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 199 (2d Cir. 1990) ("dismissal of the amended complaint without leave to amend was an abuse of discretion.")

14

**CONCLUSION**

Defendants motion to dismiss should be denied, except for the claims for negligent and intentional infliction of emotional distress and the claims for violations of New York State Constitution made against the Individual Defendants (not the City of Mount Vernon), for the reasons stated above. And if any claims are deemed by this Court to be insufficiently pled, an opportunity to amend is respectfully requested.

Dated:  New York, New York
       May 20, 2022

Rickner PLLC

By:      /s/

      Rob Rickner

14 Wall Street, Suite 1603
New York, New York 11238
Phone: (212) 300-6506
Fax: (888) 390-5401

*Attorney for Plaintiff*

15