UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/2023
```

RONALD JONES,

                              Plaintiff,

                 -against-

THE CITY OF MOUNT VERNON,
SGT. JASON CONLEY,
OFFICER STEVEN ALCANTARA, OFFICER
MARIETTA

                              Defendants.

22-cv-414 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Ronald Jones ("Plaintiff") brings this action under 42 U.S.C. § 1983 ("Section

1983") for violations of Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth

Amendments of the United States Constitution.  (Plaintiff's Complaint ("Compl.") (ECF No. 1.)

Plaintiff asserts these claims against the City of Mt. Vernon and members of the Mt. Vernon Police

Department ("MVPD") (Jason Conley, Steven Alcantara, Officer Marietta[1], together the

"Individual Defendants"), (together "Defendants").

       Presently before the Court is Defendants' partial motion to dismiss the Complaint.  (ECF

No. 12.)  For the following reasons, the partial motion to dismiss is GRANTED in part and

DENIED in part.

---

[1]       Defendants indicate that there is no officer named "Marietta" in the MVPD, and there was not at the time of
the underlying incident. Defendants state that upon information and belief, the MVPD officer who was present during
the underlying incident was Police Officer Edgar Moreta.  (*See* ECF No. 14 at 1 n.1.)

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of this motion.

On November 14, 2018, Plaintiff, a black man, was visiting the Levister Towers in Mt. Vernon, New York to have dinner with a family friend. (Compl. ¶ 22.). Plaintiff was a regular visitor to the building to see family and friends, and typically recognized most residents of the apartment complex. (*Id*. ¶ 23.)  When Plaintiff entered the building and walked over to the stairwell, a white man whom he did not recognize walked briskly down the stairs and directly towards him. (*Id*. ¶ 24.)  Plaintiff noticed scarring on the man's face. (*Id*.)  Plaintiff immediately turned around and went to the opposite stairwell, and headed up to the fourth floor to his friend's apartment. (*Id*. ¶ 25.).  As Plaintiff reached the apartment, a second unknown man grabbed Plaintiff by the shoulder and spun him around, just as two more strangers, including the one Plaintiff saw on the stairs, appeared right behind him. (*Id*. ¶ 26.)  All three men asked Plaintiff what he was running from, to which Plaintiff responded that he was not running from anyone, and he then attempted to go into the open apartment door. (*Id*. ¶ 27.)

The men stopped him and pulled out their MVPD shields, which were hanging around their necks beneath their plainclothes, revealing their identities as police officers. (*Id*. ¶ 28.) Defendants Conley and Marietta started questioning Plaintiff where he was going and for what reason. (*Id*. ¶ 29.)  In the meanwhile, Defendant Alcantra had gone to the incinerator room and brought an opened pizza box, and immediately told Conley to place Plaintiff under arrest. (*Id*. ¶ 30.) Plaintiff asked why he was being cuffed, and was told that he was in possession of a firearm, which was inside of the pizza box Alcantara pulled from the incinerator room, along with a small quantity of marijuana and two gravity knives. (*Id*. ¶ 31.)

Plaintiff was transported to the MVPD station where he was searched and his items were vouchered before he was placed into a holding cell. (*Id*. ¶ 34.)  At some point, another MVPD officer swabbed Plaintiff for DNA and left.  (*Id*.)  Plaintiff was moved around the precinct multiple times and was placed in a number of rooms (not holding cells) before he was taken for arraignment the following morning, November 15, 2018.   (*Id*. ¶ 34.) Plaintiff alleges that none of the Defendants formally questioned Plaintiff at the precinct, *Mirandized* him, took a statement from him, or tried to investigate the events which led him to be arrested and brought into the station. (*Id*. ¶ 35.)

Plaintiff was remanded to the Westchester County Jail from his arraignment on November 15, 2018 to his release on March 27, 2020.  (*Id*. ¶ 36.)  Plaintiff claims that he learned that the Defendants had fabricated documents and evidence to tie Plaintiff to the gun they recovered; fabrications which were purportedly relied upon by both the court and the prosecution to secure charges against Plaintiff.  (*Id*. ¶ 37.)  Plaintiff states that Defendants' fabrications included reports that Plaintiff had made a robust and detailed confession admitting to possession of the firearm, including details about where the gun was procured.  (*Id*. ¶ 38.) Plaintiff claims that he never made any such inculpatory statements.  (*Id*.)

Plaintiff states that on February 11, 2020, the Hon. David S. Zuckerman of the Supreme Court, Westchester County, held that the officers had illegally followed Plaintiff without the requisite level of reasonable suspicion necessary to pursue someone under New York law.  (*Id*. ¶ 39.)  In so holding, the Court found that the officers had no reasonable suspicion to believe that Plaintiff was committing, had committed, or was about to commit a crime, and their pursuit of Plaintiff was therefore unlawful.  (*Id*.)  The charges against Plaintiff were subsequently dismissed in Plaintiff's favor on March 4, 2020.  (*Id*. ¶ 41.)

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### II.    Section 1983

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker*

*v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law" and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

## DISCUSSION

In his Complaint, Plaintiff raises Section 1983 claims for false arrest, prosecution without probable cause, due process violations, and failure to intervene and conspiracy against the Individual Defendants. (*Id.* ¶¶ 78–77.) Plaintiff also raises malicious prosecution against the Individual Defendants and the City of Mount Vernon (*id.* ¶¶ 78–83), as well as intentional and negligent infliction of emotional distress (*id.* ¶¶ 89–93), and violations of Art. I § 12 of the N.Y. State Constitution (*id.* ¶¶ 94–99). Plaintiff also raises a *Monell* claim (*id.* ¶¶ 68–77) and a claim for negligent hiring, screening, retention, supervision, and training against the City of Mt. Vernon. (*Id.* ¶¶ 84–88.)

Defendants filed the instant partial motion to dismiss pursuant to Rule 12(b)(6) on June 3, 2022. Defendants argue that (i) Plaintiff's state law malicious prosecution claim is time barred; (ii) Plaintiff's conspiracy, failure to intervene, and municipal liability claims are vague and insufficiently pled; (iii) Plaintiff's negligent and intentional infliction of emotion distress claim fails as a matter of law; and (iv) Plaintiff's claim for violation of Art. I § 12 of the N.Y. State Constitution is inadequately pled and duplicative of the intentional tort claim. (*See* ECF No. 14 ("Defs.' Br.")).

For the reasons articulated below, the Court GRANTS the partial motion to dismiss as to Plaintiff's failure to intervene, civil rights conspiracy, *Monell*, and negligent hiring, screening, retention, supervision and training claims.  The Court notes that Plaintiff has withdrawn his claim for intentional and negligent infliction of emotional distress claim against all Defendants and his Art. I, § 12 of the N.Y. State Constitution claim against the Individual Defendants.  (*See* ECF No. 15 ("Pl.'s Opp.") at 2, 13 n.3, 15.)   The Court DENIES dismissal of Plaintiff's malicious prosecution claim against all Defendants and his Article I, § 12 claim against the City of Mt. Vernon.

I.      **Malicious Prosecution Claim**

In their opening brief, Defendants argue that Plaintiff's malicious prosecution claim against the Individual Defendants and the City of Mt. Vernon should be dismissed as time barred.  (Defs.' Br. at 4–5.)  A malicious prosecution claim begins to accrue when the criminal proceeding is favorably terminated.  *See Roman v. Comp USA, Inc.*, 38 AD3d 751, 752 (2007).  Plaintiff filed his lawsuit on January 17, 2022, though his criminal proceeding was dismissed in his favor on March 4, 2020.   (Compl. ¶ 41.)  As the parties both point out, Courts have used two different statutes of limitations periods for malicious prosecution claims. (*See* Def. Br. at 4–5).  For the following reasons, the Court finds that Plaintiff's malicious prosecution claim was timely filed.

Under N.Y. CPLR §215(3), malicious prosecution lawsuits are to be commenced within one year.  *See* N.Y. CPLR §215(3).  On the other hand, under N.Y. General Municipal Law § 50-i, an action against "a city, county, town, village, fire district or school district for personal injury . . . sustained by reason of the negligence or wrongful act of . . . any officer, agent or employee thereof . . . shall be commenced within one year and ninety days."  N.Y. General Municipal Law § 50-i.  After considering the 228-day tolling of the statute of limitations periods imposed by

former Governor Andrew Cuomo in light of the COVID-19 pandemic, *see Brash v. Richards*, 2021 NY 195 A.D.3d 582 (App. Div. 2021), applying the limitations period under N.Y. CPLR §215(3) would render the malicious prosecution claim untimely filed, but applying the limitations period under N.Y. General Municipal Law § 50-i means the claim was timely.[2]

Plaintiff, as expected, argues that the Court should apply the statute of limitations under N.Y. General Municipal Law § 50-i. ("Pl.'s Opp." at 5–6.) The Court agrees. The Second Circuit recently reiterated that "when, as in this case, a plaintiff sues [a municipality] (or an individual whom the [municipality] must indemnify), a one–year–and–90–day statute of limitations applies." *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016); *see also Conte v. Cty. of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014) (finding that the statute of limitations is one year and 90 days for intentional torts against municipal employees who are entitled to indemnification). In addition, the Second Circuit has indicated that "General Municipal Law § 50–i takes precedence over the one-year period of limitations provided for in CPLR 215." *Conte*, 596 F. App'x at, 5 (quoting *Wright v. City of Newburgh*, 686 N.Y.S.2d 74, 74–75 (2d Dep't 1999); *see also Williams v. City of New York*, 1305, 62 N.Y.S.3d 401, 406 (2d Dept' 2017) ("intentional tort causes of action asserted against municipal defendants must be commenced within the one–year–and–90–day statute of limitations contained in General Municipal Law § 50–i, which takes precedence over the one-year period of limitations provided for in CPLR 215.") (internal quotations omitted); *see also Jones v. City of New York*, No. 13-CV-929 (ALC), 2016 WL 1322443, at *5 (S.D.N.Y. Mar. 31, 2016) (applying General Municipal Law § 50–i, to malicious prosecution claim against New York City); *Thompson v. City of White Plains*, No. 13-CV-6602 NSR, 2015 WL 4597433, at *3 (S.D.N.Y. July

---

[2]    Considering the 228-day tolling period and applying the limitations period under N.Y. General Municipal Law § 50-j, the last day of the limitations period ended on Sunday, January 16, 2022. Under Federal Rule of Civil Procedure 6(a), the statute of limitations fell on the following business day, January 17, 2022, which is the date the Complaint was filed.

29, 2015) (applying General Municipal Law § 50–i, to malicious prosecution claim against City of White Plains).[3]

It bears mentioning that General Municipal Law § 50–i covers municipal agents and employees as long as they are indemnified by the municipality.  Under N.Y. General Municipal Law § 50-j, the City of Mt. Vernon is required to indemnify the Individual Defendants in tort cases.  *See* N.Y. General Municipal Law § 50-j.  The shorter, one-year statute of limitations period applies only when officer's actions were "clearly not within the scope of employment." *Clark v. City of Ithaca*, 235 A.D.2d 746 (4th Dep't 1997).   Here, Defendants concede that the Individual Defendants "were at all relevant times acting within the scope of their employment and each is indemnified by the City of Mount Vernon."  (ECF No. 16. ("Defs.' Reply") at 1.)  Therefore, the Individual Defendants are covered under the purview of General Municipal Law § 50–i.

Accordingly, the Court deems that Plaintiff's malicious prosecution claim was timely filed against the City of Mt. Vernon and the Individual Defendant, and therefore DENIES the motion to dismiss that claim.

## II.    Failure to Intervene Claim

---

[3]     On reply, Defendants "concede that Plaintiff's malicious prosecution claim under state law is timely when using the one year and ninety-day statute of limitations provided by New York General Municipal Law § 50-i." (Defs.' Reply at 1.)  However, Defendants point out that even after the Second Circuit's ruling in *Rentas v. Ruffin*, District Courts in the Second Circuit have dismissed New York State claims of malicious prosecution against municipalities and municipal actors as barred by the one-year statute of limitations. (*Id.* (citing *Zeng v. Chell*, No. 19-cv-3218 (JGK), 2022 U.S. Dist. LEXIS 36266, at *24 (S.D.N.Y. Mar. 1, 2022) ("The plaintiff's malicious prosecution claim therefore accrued on the dismissal of the charges against her on June 14, 2018, and fell outside the statute of limitations on June 14, 2019.")); *see also Facci-Brahler v. Montgomery Cty*., No. 1:18-CV-0941 (LEK/ATB), 2021 U.S. Dist. LEXIS 61547, at *13-14 (N.D.N.Y. Mar. 31, 2021) ("Pursuant to CPLR §215(3), an action to recover damages for malicious prosecution in New York State must be commenced within one year. Plaintiff alleges that the Glen Town Court dismissed the charge against her on May 18, 2017. This complaint was filed August 8, 2018. Her state law malicious prosecution claims under New York State law are thus time barred.") (internal citations omitted); *see also Gomez v. City of N.Y.*, 2016 U.S. Dist. LEXIS 128338, at *22 n.2 (S.D.N.Y. Sep. 14, 2016) ("Were it not time-barred by virtue of its one-year statute of limitations, the malicious prosecution claim under state law would likewise be dismissed for failure to state a claim.").  Nonetheless, given the weight of the case law and for the reasons discussed, the Court finds that the one year and ninety-day statute of limitations provided under New York General Municipal Law § 50-i would be most appropriate here.

8

Defendants move to dismiss Plaintiff's failure to intervene claim against the Individual Defendants, because Plaintiff fails to raise any specific factual allegations to plead the claim. (Reply at 2.)  For the forgoing reasons, the Court agrees.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Liability may attach where an officer observes or has reason to know: (1) "that excessive force is being used"; (2) "that a citizen has been unjustifiably arrested"; or (3) "that any constitutional violation has been committed by a law enforcement official." *Id.*  For an officer to be held liable, he or she must have had "a realistic opportunity to intervene" to prevent the violation from happening.  *Id.* (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).  However, "there can be no failure to intervene claim without a primary constitutional violation." *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015).  Further, where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable. *Simon v City of N.Y.*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (dismissing plaintiff's failure to intervene claim  "because these same officers actually arrested her.").

Plaintiff's failure to intervene claim only states that "[t]he Individual Defendants failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so" and that they "displayed deliberate indifference to Plaintiff's rights, including Plaintiff's right to be free from unreasonable and unlawful searches and seizures". (Compl. ¶¶ 62, 63.)  The Court agrees with Defendants that while Plaintiff claims in his opposition that the failure to intervene claim is actually based upon fabrication of evidence, the Complaint itself does not reflect that allegation.  (*See* Pl.'s Opp. at 9.)

"Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss. *K.D. ex rel. Duncan v. White Plains Sch. Dist*., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) (citing cases).

In any event, Plaintiff alleges that each Individual Defendant was a direct participant in the various violations alleged, and therefore, they cannot be liable under a failure to intervene theory in connection with those same violations. *See Simon*, 2011 WL 317975, at *12; *Bird v. Cnty. of Westchester*, No. 20-CV-10076 (NSR), 2022 WL 2263794, at *11 (S.D.N.Y. June 23, 2022) (dismissing failure to intervene claim where "the Amended Complaint alleges broadly that the County Defendants directly participated in the claimed constitutional violations.").

Therefore, the Court dismisses Plaintiff's failure to intervene claim.

### III.    Civil Rights Conspiracy Claim

Defendants move to dismiss Plaintiff's Section 1983 conspiracy claim raised against the Individual Defendants, arguing that it should be dismissed under the intra-corporate conspiracy doctrine and that it is insufficiently pled.  (*See* Defs.'s Br. at 7.)  The Court agrees, and therefore, dismisses Plaintiff's Section 1983 conspiracy claim.

"In order [to] state a § 1983 conspiracy claim, the plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Biswas v. City of N.Y*., 973 F. Supp. 2d 504, 533 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).  "[T]he pleadings must present facts tending to show agreement and concerted action" and therefore conclusory allegations are insufficient.  *Banks v. City of White Plains Police*, No. 14 CV 670 (VB), 2014 WL 6642360, at *3 (S.D.N.Y. Oct. 17, 2014). Moreover, "a civil conspiracy claim does not set forth an independent cause of action but rather is

sustainable only after an underlying claim has been established." *Gonzalez v. City of N.Y.*, No. 1:18-cv-2197-GHW, 2020 WL 158432, at \*4 (S.D.N.Y. Jan. 13, 2020) (quoting *DeMartino v. N.Y.S. Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016)).

In addition, "[u]nder the 'intra-corporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." *Swanhart v. New York*, No. 20 CIV. 6819 (NSR), 2022 WL 875846, at \*5 (S.D.N.Y. Mar. 24, 2022) (internal quotations and citations omitted).  However, an exception to the intra-corporate conspiracy doctrine "applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 650 (S.D.N.Y. 2015) (citing *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 291 (E.D.N.Y. 2010)).

Plaintiff argues that if Defendants concede that the Individual Defendants were acting within the scope of their employment, then the intra-corporate doctrine applies and therefore bars Plaintiff's Section 1983 conspiracy claim.  (See Pl.'s Opp. at 9–10.)  Defendants clarify that indeed, the Individual Defendants "at all times they were acting within the scope of their employment," (Defs.' Reply at 3), and the Complaint contains no allegations that any of the Individual Defendants were pursuing personal interests wholly separate and apart from the City of Mt. Vernon.  *See Swanhart*, 2022 WL 875846, at \*5 ("nowhere in the Complaint do Plaintiffs allege 'that [any] of the officers were motivated by an independent personal stake' in carrying out the alleged conspiracy of the violation of their rights") (citing *Little v. City of New York*, 487 F. Supp. 2d 426, 442–43 (S.D.N.Y. 2007)); *Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 228 (E.D.N.Y. 2014) (holding that the personal interest exception to the intra-corporate conspiracy

doctrine did not apply where "the Complaint does not contain a single allegation that [town employees] were pursuing personal interests wholly separate and apart from the Town").

Accordingly, the Court finds that Plaintiff's claim is barred under the intra-corporate conspiracy doctrine.

## IV.   *Monell* Claim Against City of Mt. Vernon

In the Complaint, Plaintiff alleges the City of Mt. Vernon should be subjected to municipal liability because the (i) MVPD allegedly has *de facto* policies of discrimination and falsifying evidence, which has been under recent scrutiny by the federal government and Westchester County (Compl. ¶¶ 70–74, 76), and (ii) MVPD has purportedly failed to meaningfully and adequately screen, hire, train, and discipline its officers, creating an environment of misconduct.  (Compl. ¶ 75; *see also id*. ¶ 76.)  For the following reasons, the Court finds that Plaintiff failed to adequately plead his *Monell* claim.

### A.  *Monell* Liability Based on Custom or Policy

Under *Monell*, a municipality may be held liable for constitutional violations when "the municipality itself caused or is implicated in the constitutional violation."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004).  A *Monell* claim requires Plaintiff to allege: (1) a custom or policy, (2) that subjected Plaintiff, (3) to a denial of a constitutional right.  *See Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011).  Further, a municipality may be liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978) (emphasis added).  Hence, both official and unofficial policies may suffice for establishing *Monell* liability.  For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so

persistent that it has the force of law.  *See Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), *rev'd and rem'd on other grounds*, 219 F.3d 202 (2d Cir. 2000).  Thus, *Monell* liability can apply where "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that" it has "tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  Repeated and consistent conduct often indicate city involvement or acquiescence to a deprivation of liberty.  *City of Canton v. Harris,* 489 U.S. 378, 395 (1989) (holding that a municipality's "policy of inaction" may rise to "the functional equivalent of a decision by the city itself to violate the constitution").

Moreover, after establishing the existence of a municipal policy or custom, a plaintiff must then establish a causal link between it and the alleged constitutional injury.  *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example,] the training inadequacies alleged, and the particular constitutional violation at issue.") (emphasis omitted); *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity.").

In the Complaint, Plaintiff alleges the following facts to show that there is a *de facto* policy or custom of allowing and condoning the unlawful targeting of Black residents by the MVPD: (i) in December 2021, the Department of Justice announced an investigation into policies and

practices of the MVPD, including whether MVPD engages in a pattern or practice of discriminatory policing and how the MVPD handles evidence (Compl. ¶ 71)[4]; (ii) the Westchester County District Attorney called for federal oversight, stating that the police department in Mt. Vernon was "systematically violating peoples' civil rights" (*id*. ¶ 72); (iii) a former MVPD officer, James Ready (not a party to this action), pleaded guilty in 2021 to assaulting a man who was cuffed and shackled in a hospital, and falsifying records in an effort to cover the attack (*id*. ¶ 73); (iv) in a December 2021 speech before the graduates of South Carolina State University, President Joe Biden specifically mentioned that the Department of Justice was conducting a "pattern-or-practice" investigation into the MVPD's practices (*id*. ¶ 74)[5]; and (v) the Westchester District Attorney's Office has pursued multiple investigations into the illegal acts and systematic targeting of Black residents by MVPD officers (*id*. ¶ 76).

The Court agrees with Defendants that each of these factual pieces, taken individually and together, fall short of adequately pleading a *Monell* claim.

As Defendants correctly argue, the Department of Justice and Westchester County District Attorney's Office investigations, without reported results, are insufficient to establish a *Monell* claim. (Defs.' Br. at 9.) *See Joseph v. Doe et al.,* No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024, at *14 (E.D.N.Y. Sep. 22, 2017) ("But, Plaintiff does not indicate the results of that investigation and the mere existence of the investigation does little to establish [an unlawful custom]."); *see also Marom v. City of N.Y.*, No. 15 Civ. 2017, 2016 WL 916424, at *22 (S.D.N.Y.

---

[4]     See also "United States Attorney Damian Williams Announces Investigation Of The Mount Vernon Police Department," The United State Attorney's Office for the Southern District of New York (Dec. 3, 2021), available at https://www.justice.gov/usao-sdny/pr/united-states-attorney-damian-williams-announcesinvestigation-mount-vernon-police .

[5]     The Court takes judicial notice of public media sources discussing President Joe Biden's 2021 speech, which appears to describe the same December 2021 investigation that the Department of Justice announced. *See* President Biden Calls Out Mount Vernon NY Police Department, YONKER TIMES, (Dec. 19, 2021) https://yonkerstimes.com/president-biden-calls-out-mount-vernon-ny-police-department/ .

Mar. 7, 2016) ("the allegations concerning previous section 1983 lawsuits fail to explain which—if any—lawsuits led to findings of liability against the NYPD for constitutional violations, beside the one conviction of an NYPD officer.").  While Plaintiff is right that he can present news articles and government investigations in support of his *Monell* claim, (*see* Pl.'s Opp. at 11), Plaintiff does not offer any news articles discussing reported violations, and the case law that Plaintiff offers regarding government investigations all involve those that have yielded results or that discuss findings in reports. *See Edwards v. City of New York*, No. 14-CV-10058 KBF, 2015 WL 5052637, at *5 (S.D.N.Y. Aug. 27, 2015) (referencing findings by an August 2014 report by the United States Attorney for the Southern District of New York); *Rodriguez v. City of New Yor*k, No. 15-CV-07945, 2018 WL 1276826, at *7 (S.D.N.Y. Mar. 9, 2018) ("Publicly reported information that the Complaint references corroborates these allegations, including reports that insufficiently supervised corrections officers face no consequences for misconduct and that officers neglected or delayed medical treatment for inmates."); *see also Santiago v. Westchester Cnty*., No. 13 CIV. 1886 LGS, 2014 WL 2048201, at *6 (S.D.N.Y. May 19, 2014) ("The Complaint names five other inmates who were alleged victims of excessive force at the hands of specific corrections officers. Defendant Westchester County was made aware of these and other alleged violations by the United States Department of Justice, Southern District of New York as a result of a CRIPA (Civil Rights of Institutionalized Persons Act) investigation in 2009.  The results of the CRIPA investigation allegedly concluded that the Westchester County Jail inadequately protected inmates from harm and use of excessive force by staff.").

In addition, while Plaintiff offers the example of a former MVPD officer who plead guilty for fabricating evidence, one case is insufficient to show a custom or policy.  *See Tieman v. City of Newburgh*, No. 13-CV-4178 KMK, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015)

("Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality].'") (citing *Newton v. City of New York*, 566 F.Supp.2d 256, 270 (S.D.N.Y.2008)); *see also Joseph*, 2017 WL 4233024, at *6 ("[A] single lawsuit does not constitute enough evidence to infer a widespread custom.").

Even if Plaintiff had sufficiently alleged a widespread practice, his allegations also fail to show that such "policy" was the "moving force" behind his alleged constitutional violation. For municipal liability to attach, a plaintiff's injuries must have "occurred as the result of a municipal policy . . . ." *Amnesty Am.*, 361 F.3d at 130.  Here, Plaintiff alleges in relevant part that "the driving force behind these constitutional violations were the *de facto* and explicit policies and practices of the MVPD and the City of Mt. Vernon."  (Compl. ¶ 69.)  But boilerplate allegations of causation are insufficient to overcome a motion to dismiss.  *See Pettiford v. City of Yonkers*, 14 CIV. 6271 (JCM), 2021 WL 2556172, at *10 (S.D.N.Y. June 21, 2021); *see also Tieman*, 2015 WL 1379652, at *14 (declining to accept as true conclusory accusations unsupported by facts that would permit the court to infer that city policies caused the alleged constitutional violation).  Even when drawing all inferences in his favor, as the Defendants point out, nowhere does Plaintiff plead any facts about which City of Mt. Vernon policymakers were on notice, how they received notice, and how exactly the City of Mt. Vernon approved of such policies despite having notice of the same. As the Second Circuit has previously noted, a plaintiff's allegations on causation must be premised on more than "on . . . the mere fact that the misconduct occurred in the first place." *Amnesty Am.*, 361 F.3d at 130; *accord Pettiford*, 2021 WL 2556172, at *10.

### B.  *Monell* Liability Based on Failure to Train

Municipal liability may also be premised on a failure to train employees when inadequate training "reflects deliberate indifference to ... constitutional rights."  *Canton,* 489 U.S. at 392.  To

prove deliberate indifference, a plaintiff must properly plead: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir. 1992)).  A failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Here, the Court agrees with Defendants that Plaintiff only offers conclusory allegations in support of his *Monell* claim on the basis of failure to train.  (*See* Defs.' Br. at 10.)  Plaintiff only provides a boilerplate allegation that "[t]he MVPD has also failed to meaningfully and adequately screen, hire, train, discipline its officers, creating an environment of rampant misconduct without consequence," (Compl. ¶ 75), but fails to set forth any factual allegations regarding the trainings that the City of Mount Vernon has failed to provide.  *See McClean v. Cnty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *23 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) ("While a court may not apply a heightened pleading standard to *Monell* claims, 'boilerplate' conclusions as to municipal liability will not suffice, even at this early stage of the litigation."); *Turczyn ex rel. McGregor v. City of Utica*, No. 6:13-CV-1357 GLS/ATB, 2014 WL 6685476, at *6 (N.D.N.Y. Nov. 26, 2014) ("The amended

complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion."); *Guerrero v. City of N.*Y., No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do not rise to the level of plausibility required to state a viable *Monell* claim.") (internal quotation marks omitted).

Therefore, Plaintiff fails to plead a *Monell* claim based on a failure to train.

### V.     Negligent Hiring, Retention, Supervision, and Training Claim Against City of Mt. Vernon

In order establish a claim for negligent hiring, retention, supervision, and training, "in addition to the standard elements of negligence, a plaintiff must show 1) that the tortfeasor and the defendant were in an employee-employer relationship; 2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and 3) that the tort was committed on the employer's premises." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.2004) (citations and quotations omitted).  However, "[t]o make out a claim for negligent hiring, supervision, or retention, '[t]he employee . . . must not be acting within the scope of his or her employment.'"  *See Harisch v. Goldberg*, 2016 WL 1181711, at 14-15 (S.D.N.Y. 2016); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y.), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015) ("New York law does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment.").

Plaintiff indicates that it would be premature to dismiss his negligence claims unless Defendants admit that the Individual Defendants admit that they acted within the scope of their employment.  (Pl.'s Opp. at 12.)  In their reply brief, Defendants clarify that indeed, the Individual Defendants were acting within the scope of their employment at all times.  (Defs.' Reply at 6.)

Because the Individual Defendants were acting within the scope of their employment, there are no grounds for Plaintiff to assert his negligent claims against the City of Mt. Vernon. Therefore, the Court dismisses Plaintiff's negligent hiring, retention, supervision, and training claim.

**VI.     Art. I § 12 of the N.Y. State Constitution Claim**

Defendants seek to dismiss Plaintiff's Art. I, § 12 of the N.Y. State Constitution claim.  For the reasons stated below, the Court DENIES dismissal of this claim as to the City of Mt. Vernon.

Art. I § 12 of the N.Y. State Constitution affords people freedom from unreasonable search and seizure, freedom from arrest without probable cause, freedom from false arrest, freedom from the lodging of false charges against him, and from deprivation of liberty without due process of law.  *See* N.Y. Const. Art. I, § 12.  "Although the New York Court of Appeals has recognized a cause of action for damages based on official conduct violating the State's Constitution, the same court has made clear that such a cause of action is a 'narrow remedy' available only when necessary to effectuate the purposes of the State constitutional protections [that the] plaintiff invokes or appropriate to ensure full realization of [the plaintiff's] rights."  *Biswas v. City of New York*, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) (internal citation and quotations omitted).  "Thus, the state constitutional tort is usually available only in cases in which a plaintiff . . . has no alternative remedy."  *Id.* (internal citation omitted).  "Actions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the [S]tate Constitution."  *Id.*

Plaintiff concedes that his claims under Art. I § 12 of the N.Y. State Constitution against the Individual Defendants should be dismissed, and indicates that he only brings this claim against the City of Mt. Vernon as a way to impose *respondeat superior* liability for due process violations,

like the fabrication of evidence.  (Pl.'s Opp. at 13; *see also* Compl. ¶ 95.v.)  Plaintiff argues that there is no common law due process tort, and that while due process violations are applicable under Section 1983, the U.S. Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior* in § 1983 cases."  (*Id*. (citing *Brown*, 520 U.S. at 403).  Plaintiff appears to have abandoned his Art. I § 12 claim against the City of Mt. Vernon in connection with his claims for (i) freedom from unreasonable search and seizure of his person and property; (ii) freedom from arrest without probable cause; (iii) freedom from false imprisonment; and (iv) freedom from the lodging of false charges against him by police officers and prosecutors.  (*See* Compl. ¶ 95.i–iv.; Pl.'s Opp. at 13–14.)

"[U]nlike cases brought under § 1983, municipalities may be liable for the common law torts, like . . . malicious prosecution, committed by their employees under the doctrine of *respondeat superior*." *Buari v. City of New York*, 530 F. Supp. 3d 356, 409 (S.D.N.Y. 2021) (citing *Mesa v. City of New York*, No. 09 Civ. 10464(JPO), 2013 WL 31002, at *34 (S.D.N.Y. Jan. 3, 2013) (quoting *L.B. v. Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002)).  Courts in this Circuit have concluded that "§ 1983 is not an adequate alternative remedy for state-constitutional claims that rely on a theory of *respondeat superior*." *Buari*, 530 F. Supp. 3d at 409 (citing *Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018) (emphasis added) (collecting cases)).   In addition, the New York Court of Appeals has recognized that "[a] plaintiff seeking to recover on the basis of *respondeat superior* simply does not come within the terms of section 1983." *Id*. (citing *Brown v. State*, 652 N.Y.S.2d 223 (1996) (emphasis added)); *accord Alwan*, 311 F. Supp. 3d at 587.

Therefore, because Plaintiff does not have a way to raise a claim for *respondeat superior* liability against the City of Mt. Vernon under Section 1983, Plaintiff's state constitutional due

process claim survives.  *See Buari*, 530 F. Supp. 3d at 409 ("Buari's state constitutional due process claim survives, however, insofar as he seeks to hold the City liable under the doctrine of respondeat superior.") (collecting cases).  Defendants argue that the claim as alleged in the Complaint is vague, and the Complaint does not state that Plaintiff's due process claim is based on fabrication of evidence.  (Defs.' Reply at 7.)  However, the Court disagrees, finding that Plaintiff adequately pled the Art. I § 12 as against Mt. Vernon.  (*See* Comp. ¶¶ 38, 95.)

### VII.    Leave to Amend

Lastly, the Court addresses Plaintiff's request for leave to amend the claims dismissed by this Opinion. (Pl.'s Opp. at 14.)  Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiff has not amended his Complaint, and the Court therefore exercises its discretion to grant Plaintiff leave to file an Amended Complaint.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants' partial motion to dismiss the Complaint is GRANTED in part and DENIED in part as follows:  The Court GRANTS the partial motion to dismiss as to Plaintiff's failure to intervene (Count IV), civil rights conspiracy (Count IV), *Monell*, (Count V) and negligent hiring, screening, retention, supervision, and training (Count VII) claims. The Court also notes that Plaintiff has withdrawn his claim for intentional and negligent infliction of emotional distress claim (Count VIII) against all Defendants and his Art. I, § 12 of the N.Y.

State Constitution claim against the Individual Defendants (Count IX).  (*See* Pl.'s Opp. at 2, 13 n.3, 15.)  The Court DENIES dismissal of Plaintiff's malicious prosecution claim against all Defendants (Count VI) and his Article I, § 12 claim against the City of Mt. Vernon (Count IX).

Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice.  If he chooses to do so, Plaintiff will have until March 10, 2023 to file an Amended Complaint consistent with this order.  Defendants are then directed to answer or otherwise respond by March 31, 2023.  Plaintiff is advised that the Amended Complaint *will replace not supplement* the Amended Complaint so any claims he wants to pursue must be included in or attached to the Amended Complaint.

If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 12.

Dated: February 17, 2023                              SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge