UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RONALD JONES,

                      Plaintiff,

-against-

THE CITY OF MOUNT VERNON,
SERGEANT JASON CONLEY, OFFICER
STEVEN ALCANTARA, and OFFICER
EDGAR MORETA

                      Defendants,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/2025

22-cv-414 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Ronald Jones initiated this action January 17, 2022, alleging violations of the Fourth Amendment, Fifth Amendment, Sixth Amendment and Fourteenth Amendment under 42 U.S.C. § 1983 and corresponding conspiracy and failure to intervene claims, violations of due process under the New York State Constitution, as well as state law claims of negligent hiring, screening, retention, supervision and training and negligent and intentional infliction of emotional distress. Only Plaintiff's malicious prosecution and due process claims against Defendants City of Mount Vernon ("Mount Vernon"), Sergeant Jason Conley ("Conley"), Officer Steven Alcantara ("Alcantara") and Officer Edgar Moreta[1] ("Moreta") (together, "Defendants") remain, which the Court now addresses.

      Presently before the Court is the Defendants' Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. For the following reasons, the Court DENIES Defendants' Motion for Summary Judgment.

---

[1] Officer Edgar Moreta was inaccurately named as "Officer Marietta" in the Complaint.

1

## BACKGROUND

Plaintiff and Defendants submitted briefs, Defendants submitted a statement of material fact pursuant to Local Rule 56.1, Plaintiff filed a counter statement of material fact, to which Defendants further filed their own counter statement of material fact, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

On November 14, 2018, Conley, Alcantara and Moreta, while working for the Mount Vernon Police Department ("MVPD") were conducting a vertical patrol of Levister Towers at 70 West 3rd Street ("Levister Towers") (Defendants Rule 56.1 Statement ("Defs' 56.1") ¶ 16.) Vertical patrols are conduced within a specified area to observe and deter any criminal activity that may be taking place. (*Id*. ¶ 17.) On the night at issue, Conley, Alcantara and Moreta were dressed in plain clothes; Defendants assert that their police shields were out and visible (*Id*. ¶ 17), but Plaintiff disputes this. (Plaintiff Rule 56.1 Statement ("Pltf's 56.1") ¶ 1.) When Plaintiff saw Conley, he turned around and ran in the opposite direction. (Defs' 56.1 ¶ 21.) Plaintiff asserts this was because Plaintiff was "spooked" by Conley. (Pltf's 56.1 ¶ 21.)

Conley and Alcantara assert that as Plaintiff ran they observed him reach for his waistband (Defs' 56.1 ¶ 26); Plaintiff disputes this, stating instead that he possibly reached for his pocket where he had a bottle of Hennessy. (*Id*. ¶ 25.) Conley and Alcantara believed that Plaintiff carried a firearm (Defs' 56.1 ¶ 27), which Plaintiff denies. (*Id*. ¶ 27.)

Plaintiff ran upstairs to the fourth floor where he then entered the incinerator room because he wanted to discard the bottle of Hennessey he had in his pocket. (*Id*. ¶ 31.)[2] Plaintiff wanted to

---

[2] Plaintiff admits that at his 50-H hearing held on April 7, 2021, Plaintiff testified that he did not enter the incinerator room. (Pltf's 56.1 ¶ 77.) Plaintiff subsequently changed his testimony, stating in his deposition that he did, in fact, enter the incinerator room. (*Id*. ¶ 78.)

2

discard the bottle because he believed Conley was a police officer and having a bottle of Hennessey on his person would have constituted a violation of the conditions of his parole. (*Id*. ¶ 33.) Plaintiff then left the incinerator room and went towards Apartment 4K. (*Id*. ¶ 34.)

Alcantara, at that point, states that he exited the stairwell at the fourth floor level and heard the door to the incinerator room closing. (Defs' 56.1 ¶ 35.) Plaintiff states that Alcantara could not have possibly heard the door closing, as the staircase he used to reach the fourth floor was at least forty feet from the incinerator room, across a curved hallway. (Pltf's 56.1 ¶ 35.) When Conley and Moreta arrived on the fourth floor, Conley questioned Plaintiff as to why he ran. (*Id*. ¶¶ 41-42.)

In the meantime, Alcantara went to the incinerator room. (*Id*. ¶ 42.) No one was in the incinerator room, and Alcantara found a pizza box on the floor therein. (*Id*. ¶¶ 43-44.) Alcantara inspected the pizza box, which he found contained a pistol, two knives, and marijuana. (*Id*. ¶ 45.) At that point, Plaintiff was handcuffed and transported to MVPD headquarters. (*Id* ¶ 47.)

Defendants state that at the MVPD Plaintiff was interviewed and provided a confession, which Alcantara summarized in a supplemental narrative report. (Defs' 56.1 ¶¶ 57-61.) Plaintiff denies making the statements captured by the supplemental narrative report, and denies, in general, making a confession. (Pltf's 56.1 ¶ 57-61.)

Based on the purported confession, Plaintiff was charged with criminal possession of a weapon in the second degree and was subsequently detained and remanded into custody. (Defs' 56.1 ¶¶ 65-66.) The charge was presented to a Grand Jury, which returned a true bill indicting Plaintiff. (*Id*. ¶ 67.) Plaintiff argues that the Indictment was predicated on Defendants' fabricated account of their pursuit of Plaintiff at Levister Towers and Plaintiff's purported confession. (*Id*.) The charges brought against Plaintiff were ultimately dismissed. (*Id*. ¶ 74.)

Based on the foregoing, Plaintiff's brings claims alleging malicious prosecution and due process violations under state law and federal law.

## PROCEDURAL HISTORY

On January 8, 2022, Plaintiff commenced this action against the Defendants in his Complaint ("Compl."). (ECF No. 1.) On June 2, 2022, Defendants filed their motion to dismiss Plaintiff's complaint and memorandum of law in support. (ECF Nos. 12, 14.) Plaintiff filed his opposition to Defendants' motion. (ECF No. 15.) Defendants filed their reply in support of their motion to dismiss. (ECF No. 16.) The Court then issued its opinion and order granting in part and denying in part Defendants' motion to dismiss. (ECF No. 22.) Thereafter, on August 26, 2024, Defendants filed their motion for summary judgment, along with their memorandum of law in support. (ECF Nos. 54, 57.) Plaintiff filed his memorandum of law in opposition to Defendants' motion for summary judgment. (ECF No. 58.) Defendants then filed their reply memorandum of law in support of their motion for summary judgment. (ECF No. 61.) Finally, Defendants filed their Rule 56.1 Statement (ECF No. 56), Plaintiff filed his Counter Statement to Defendants' Rule 56.1 Statement (ECF No. 60), and Defendants filed their Counter Statement in response. (ECF No. 62.)

## LEGAL STANDARD

### A. Rule 56

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine

4

issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

5

Finally, where the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 259 (D. Conn. 2004), *aff'd sub nom. Barlow v. Dep't of Pub. Health, Connecticut*, 148 F. App'x 31 (2d Cir. 2005).

## DISCUSSION

Plaintiff brings claims alleging malicious prosecution and due process violations under federal and state law. The Court addresses them in turn.

### A. Malicious Prosecution Claim

In order for Plaintiff to state a malicious prosecution claim under Section 1983 and common law, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). There exists a presumption of probable cause where, as in Plaintiff's underlying criminal action, the grand jury returned an indictment. *See Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003); *see also Ambrose v. City of New York*, 623 F. Supp. 2d 454 (S.D.N.Y. 2009).

This presumption can be overcome, however, where there is evidence adduced that demonstrates that the indictment was "produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon v. City of New York*, 455 N.E.2d 1248 (1983). If this presumption is not overcome and probable cause is, therefore, found to exist, a malicious prosecution claim fails as a matter of law. *Savino*, 331 F.3d 63 (noting that probable cause serves as a complete defense to state law and federal law claims of malicious prosecution).

6

In support of his claim that Defendants relied on and proffered fraudulent evidence, Plaintiff may rely on his own testimony. *Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016). At the same time, the Second Circuit has fashioned an exception wherein a court decides, at summary judgment, "in the course of determining whether there were any 'genuine issues of material fact,' that no reasonable jury could have credited [an individual's] testimony." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005). The "*Jeffreys* exception applies when 1) the plaintiff relies 'almost exclusively on his own testimony,'; 2) the plaintiff's testimony is 'contradictory or incomplete'; and 3) the plaintiff's testimony is contradicted by the evidence produced by the defense." *Morris v. Plummer*, 2011 WL 1135936 (N.D.N.Y. Mar. 2, 2011), *report and recommendation adopted*, 2011 WL 1114263 (N.D.N.Y. Mar. 25, 2011).

    a. **Defendants' Purportedly Fabricated Account of their Pursuit of Plaintiff**

As stated *supra*, in the instant action there exists a presumption of probable cause because the grand jury returned an indictment against Plaintiff in the underlying criminal action. (Defs' 56.1 ¶ 67); *Savino*, 331 F.3d 63; *see also Ambrose*, 623 F. Supp. 2d 454. Attempting to overcome this presumption, Plaintiff argues that Defendants fabricated evidence which the prosecution later relied on in securing the indictment. Plaintiff specifically asserts two instances where the Defendants purportedly fabricated evidence: 1) "the false account of their pursuit of Plaintiff" and 2) "the fabricated confession." (Defs' 56.1 ¶ 67.)

Regarding Defendants pursuit of Plaintiff, the Court finds that a reasonable jury could not credit Plaintiff's testimony. Plaintiff's argument relies almost entirely on his own testimony, disputing Defendants recollection of their pursuit of Plaintiff. (Opp., p. 3.) Plaintiff's testimony is contradictory, and, more importantly, is contradictory on crucial facts, namely whether Plaintiff ever entered the incinerator room where Defendants later discovered a gun and marijuana. Plaintiff

first stated that he never entered the incinerator room at his 50-H hearing held on April 7, 2021. (Defs' 56.1 ¶ 77.) Later, Plaintiff's position changed when, during his deposition, he stated that he had, in fact, gone to the incinerator room. (Defs' 56.1 ¶¶ 78-79.) Finally, Plaintiff's assertion that Defendants fabricated their recollection of the pursuit contravenes the evidence furnished by Defendants, specifically the New York State Incident Report (MA Decl., Ex. 2), as well as the sworn deposition testimony of Sergeant Conley (*Id*. Ex. 5), Officer Alcantara (*Id*. Ex. 6), and Officer Moreta (*Id*. Ex. 7).

Such material inconsistency of Plaintiff's own testimony, especially when viewed in light of the evidence contradicting Plaintiff's claim of fraud, counsels application of the *Jeffreys* exception to said testimony. Therefore, the Court finds that "no reasonable juror could credit [P]laintiff's testimony" surrounding Defendants' pursuit of Plaintiff and finds that "no reasonable factfinder could conclude" that Defendants fabricated their account of their pursuit of Plaintiff. *Morris v. Plummer*, 2011 WL 1135936, *14 (N.D.N.Y. Mar. 2, 2011), *report and recommendation adopted*, 2011 WL 1114263 (N.D.N.Y. Mar. 25, 2011).

This conclusion favors granting Defendants' motion for summary judgment; however, where the motion fatally falls short is its inability to demonstrate that the *Jeffreys* exception should apply to Plaintiff's testimony surrounding the alleged confession.

b. **Defendants' Purportedly Fabricated Confession**

Defendants offer a myriad of evidence in support of the validity of Plaintiff's purported confession, including, but not limited to, the sworn deposition testimony of Sergeant Conley (MA Decl., Ex. 5), Officer Alcantara (*Id*. Ex. 6), Officer Moreta (*Id*. Ex. 7), and Officer Moreta's narrative report of the purported confession (*Id*. Ex. 14). In opposition, Plaintiff offers his sworn

8

deposition testimony wherein Plaintiff denies ever confessing and states that the Officers, unsuccessfully, attempted to get Plaintiff to confess. (*Id*. Ex. 4 at 99:11-15); (Opp. at 7.)

The Court concludes that a reasonable juror could credit Plaintiff's denial of confessing. Considering the relevant *Jeffreys* exception analysis, while Plaintiff does rely entirely on his own testimony (Factor 1) and is contradicted by Defendants' evidence (Factor 3), Plaintiff's testimony is neither self-contradictory nor incomplete (Factor 2).  The conflict between Plaintiff's testimony and Defendants' evidence is not a reflection of the veracity of Plaintiff's evidence, but rather is a reflection of a genuine dispute of material fact – whether Plaintiff did, in fact, confess.

While Defendants have furnished a substantial amount of evidence that favors the existence of Plaintiff's purported confession, Plaintiff's own, sworn deposition testimony is sufficient by itself to survive dismissal at summary judgment. Courts have routinely held that "[e]ven when a plaintiff has relied exclusively on his own testimony, courts have denied summary judgment to defendants as long as plaintiff's 'testimony was not contradictory or rife with inconsistencies such that it was facially implausible.'" *Russo v. DiMilia*, 894 F. Supp. 2d 391, 410 (S.D.N.Y. 2012) (quoting *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 726 (2d Cir.2010); *see also Bridgewater v. Taylor,* 832 F.Supp.2d 337, 345 (S.D.N.Y.2011) (denying summary judgment to plaintiff where defendant's evidence consisted "solely of his own testimony," but this testimony offered "a plausible alternate version of events"); *Butler v. Gonzalez,* 2010 WL 3398156, at *8 (S.D.N.Y. May 18, 2010) (denying summary judgment where, although plaintiff's evidence was "minimal," and his allegations "suffer[ed] from a lack of corroboration," there were no "material inconsistencies" in plaintiff's account).

While it certainly appears that the weight of the evidence favors Defendants arguments, "at [t]he summary judgment stage, 'it is undoubtedly the duty of district courts not to weigh the

9

credibility of the parties.'" *DiMilia*, 894 F. Supp. 2d 391 at 410 (quoting *Jeffreys*, 426 F.3d 549 at 554). Accordingly, the Court cannot find that the *Jeffreys* exception applies to Plaintiff's testimony in opposition to the purported confession, and instead finds that there exists a genuine dispute of material fact as to whether the Plaintiff did indeed offer the confession as captured by Officer Moreta's narrative report.

Correspondingly, because a reasonable juror could credit Plaintiff's testimony that he never offered the purported confession, a genuine dispute of material fact exists as to whether the presumption of probable cause brought forth by the Indictment was rebutted by way of being procured through fraud. *See Colon*, 455 N.E.2d 1248. This necessarily means that there exists a genuine dispute of material fact as to whether there was probable cause to initiate the criminal proceedings in the underlying criminal action. As a result, because there may have been a lack of probable cause, Factor 3 of the *prima facie* case to establish malicious prosecution counsels against granting summary judgment against Plaintiff's malicious prosecution claim.

As to the remaining elements needed to establish a malicious prosecution claim, the record clearly indicates that a criminal proceeding was initiated against the Plaintiff (Factor 1) (MA Decl. Ex. 16); the criminal proceeding resolved in Plaintiff's favor (Factor 2) (MA Decl. Ex. 18); and the genuine dispute of material fact regarding whether there was probable cause creates a genuine dispute of material fact regarding whether actual malice motivated the Defendants' actions (Factor 4); *see Tompkins v. City of New York,* 50 F. Supp. 3d 426 (S.D.N.Y. 2014) (noting that a "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment"); *see also Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 131 (2d Cir.1997); *Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir.1994).

10

Therefore, considering the totality of the record and evidence presented thus far, the Court must deny summary judgment against Plaintiff's malicious prosecution claim.

### B. Due Process Claims

Plaintiff also asserts due process claims arising under the New York State Constitution and Section 1983. Courts have held that the New York State Constitution's due process protections are "coextensive" with those arising under the United States Constitution, and where a Court concludes that a plaintiff's federal due process rights were not violated, the conclusion that a plaintiff's New York due process rights were likewise not violated follows. *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999). In order to effectuate a due process claim predicated on fraudulent evidence, a plaintiff "must show that (1) an investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) plaintiff suffers a deprivation of life, liberty, or property as a result." *McIlwain v. City of New York*, 2019 WL 988891 (S.D.N.Y. Mar. 1, 2019).

Defendants' argument against Plaintiff's state and federal law due process claims rests on two objections: that the Defendants did not fabricate evidence, and that Plaintiff did not experience a deprivation of liberty. As to the former, given the Court has concluded there is a genuine dispute of material fact as to whether Plaintiff's purported confession is fabricated, there exists a genuine dispute of material fact as to whether the Defendants fabricated information that was relied upon by the prosecution in the underlying action. Regarding the latter, the Defendants' contention that Plaintiff did not experience a deprivation of liberty misunderstands the relevant standard; Plaintiff was held in jail due to the indictment against him. (Defs' 56.1 ¶¶ 67, 74.) Time spent in jail clearly constitutes a deprivation of liberty. *Snead v. City of New York*, 463 F. Supp. 3d 386, 395 (S.D.N.Y. 2020). Therefore, because Plaintiff experienced a deprivation of liberty, because there exists a

genuine dispute of material fact as to whether the Defendants fabricated Plaintiff's confession, and because Defendants do not otherwise offer a substantive opposition to Plaintiff's due process claims, the Court denies summary judgment against Plaintiff's state law and federal law due process claims.

**CONCLUSION**

For the foregoing reasons, Defendants City of Mount Vernon, Sergeant Jason Conley, Officer Steven Alcantara, and Officer Edgar Moreta's Motion for Summary Judgment is DENIED. The Clerk of Court is kindly directed to terminate the motion at ECF No. 54. A telephonic Pretrial Conference is scheduled for February 28, 2025 at 12:00 PM. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: 855-244-8681; (2) Enter the Meeting/Access Code: 2310 494 3855 #; (3) Press pound (#) to enter the teleconference as a guest.

Dated:   February 3, 2025　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge